


ENTERED
12/03/2015

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| **ENRIQUE ESPINOSA; dba ESPINOZA** | § | **CASE NO: 15-70234** |
| **CONCRETE, *et al*** | § | |
| **Debtors** | § | |
| | § | **CHAPTER 13** |

**MEMORANDUM OPINION**
**REGARDING SOMOS TRES, LLC'S MOTION**
**FOR PAYMENT OF ADMINISTRATIVE CLAIM**
**[*Resolving ECF No. 60*]**

## I. Introduction

Before this Court is Somos Tres, LLC's (hereinafter "***Somos Tres***" or "***Creditor***") Motion for Payment of Administrative Claim, seeking the reasonable rental value for the post-petition months in which Debtors have remained in possession of Creditor's residential property without paying rent. Creditor seeks an Administrative expense pursuant to 11 U.S.C. § 503(b) for the months of May, 2015 through September, 2015 and continuing hereafter for the time in which Debtors have been occupying the property. Debtors vehemently oppose the payment of any administrative claim. This Court will now consider whether to grant Creditor's Motion for Payment of Administrative Claim.

## II. Findings Of Fact

To the extent that any Finding of Fact constitutes a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law constitutes a Finding of Fact, it is adopted as such.

1. On May 5, 2015, Enrique and Laura Espinosa (herein "***Debtors***") filed for

bankruptcy under chapter 13 of title 11 of the United States Bankruptcy Code.[1] [ECF No. 1].

2. On May 21, 2015, Debtors filed their completed bankruptcy Schedules and Statement of Financial Affairs, in which they listed on Schedule A their homestead property (herein "***Homestead Property***") described as 2520 8 ½ N. Weslaco, Texas 78599, Perlita Lot 5, and stated that the [p]roperty had been foreclosed by Somos Tres LLC pre-petition. [ECF No. 13].

3. On May 28, 2015, Somos Tres filed its Motion For Relief From Stay (hereinafter "***Motion***"). [ECF No. 20]. In the Motion, Somos Tres alleged that it had purchased the homestead property at a non-judicial tax lien foreclosure sale conducted on April 7, 2015 and recorded the Deed on April 9, 2015, all of which occurred pre-petition. The Motion further alleged that on April 28, 2015, Somos Tres filed a forcible detainer action in the Justice of The Peace Court, Precinct 1, Place 2, Hidalgo County Texas (hereinafter "***State Court***"), styled as Cause No. LC15059JM. Thereafter, the Motion alleges, the State Court issued a default judgment granting Somos Tres possession of the Homestead Property on May 12, 2015. Somos Tres further alleged that it was not given notice of the May 5, 2015 bankruptcy filing until after the entry of the default judgment by the Justice of the Peace Court.

4. On June 17, 2015, this Court conducted a hearing on the Motion and lifted the automatic stay on the Homestead Property, allowing Somos Tres to proceed to evict the Debtors. [ECF No. 24].

5. On June 18, 2015, the chapter 13 trustee filed a Motion To Dismiss the chapter 13 proceeding based on the allegations (i) that the Debtors were $406.00 in arrears, (ii) for failure to

---

[1] Any reference to **"Code"** or **"Bankruptcy Code"** is a reference to the United States Bankruptcy Code, **11** U.S.C., or any section (i.e.§) thereof refers to the corresponding section in 11 U.S.C.

file necessary amendments, and (iii) of failure to propose a feasible plan. [ECF No. 25].

6. On June 23, 2015, the case was automatically dismissed by this Court for failure to comply with this Court's deficiency notice. [ECF No. 28].

7. On June 29, 2015, Debtors filed their Motion To Reconsider Dismissal, alleging that they had now cured the filing deficiencies by filing the missing payment advices. [ECF No. 32].

8. On July 6, 2015, the Debtors filed their Motion To Reinstate The Automatic Stay. [ECF No. 36].

9. On July 20, 2015, Somos Tres filed its Response to the Debtors' Motion To Reinstate The Automatic Stay. [ECF No. 42].

10. On July 21, 2015, Debtors filed amended schedules which included, *inter alia*, Schedule A with the following comment: "property foreclosed by Propel Financial Services before bankruptcy and was purchased by Somos Tres; there will be a wrongful foreclosure adversary suit filed setting aside this foreclosure. The amount listed as secured is for disclosure purposes only; it is Debtors position that this lien and amount are disputed." [ECF No. 46].

11. On July 22, 2015, this Court conducted a hearing on Debtors' Motion To Reconsider Dismissal and granted Debtors' Motion, reinstating the chapter 13 proceeding. [ECF No. 49].

12. On July 23, 2015, this Court conducted a hearing on Debtors' Motion To Reinstate the Automatic Stay and granted Debtors' Motion reinstating the automatic stay. [ECF No. 51]

13. On August 14, 2015, the Debtors and Somos Tres filed an Agreed Emergency

Motion to Vacate Order docketed at ECF No. 51 (hereinafter "***Emergency Motion***").

14. On August 18, 2015, the court conducted a hearing on the Emergency Motion, vacated the order filed at ECF No. 51, and entered a clarifying order granting reinstatement of the chapter 13 proceeding but withdrawing the granting of the automatic stay. [ECF No. 56].

15. On September 2, 2015, Somos Tres filed its Application For Payment of Administrative Expenses for Reasonable Rent (hereinafter "***Application***"). [ECF No. 60]. In the Application, Somos Tres alleges that the Debtors have been living in the homestead property as tenants at sufferance since April 9, 2015 and that Somos Tres was entitled to reasonable rent payable as an administrative expense.

16. On October 8, 2015, Debtors filed a Voluntary Motion To Dismiss Their Chapter 13 Case Without Prejudice (herein "***Voluntary Motion***"). [ECF No. 67].

17. On October 9, 2015, Somos Tres filed its response to Debtors' Voluntary Motion. [ECF No. 70].

18. On October 14, 2015, this Court conducted a hearing on Debtors' Voluntary Motion and, after considering this Court's holding in the *In re Guerrero*[2] opinion, the Debtors did not oppose dismissal with prejudice for 180 days. [ECF No. 73].

19. On October 21, 2015, the Court conducted an evidentiary hearing on Somos Tres's Application ("***Evidentiary Hearing***"), which is the subject of this Memorandum Opinion. This Court took the matter under submission and instructed the parties to submit briefing on the issue of whether or not Somos Tres is entitled to an administrative claim.

20. In Debtors' Post-Hearing Brief in Opposition to Somos Tres' Application for

[2] *In re Guerrero*, 2015 WL 5302644 (Bankr. S.D. Tex. Sep. 9, 2015).

Administrative Claim, Debtors presented several arguments in opposition. [ECF No. 78]. First, Debtor argued that Creditor cannot seek a second bite of the apple, having requested the award of rent in State Court, which that court denied. *Id.* Second, since Creditor presented to this Court that the Homestead Property is its property, the Homestead Property does not constitute property of the estate and therefore cannot be the subject of administrative fees. *Id.* Third, Debtors allege that Creditor has failed to meet its burden of showing that the estate has received an actual benefit. *Id.* Fourth, Debtors allege that Creditor has failed to meet its burden of showing the reasonable rental rate on the Homestead Property. *Id.*

## III. Legal Authority

### A. Jurisdiction and Venue

District courts have jurisdiction over "all proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. "Arising under" jurisdiction involves causes of action created or determined by a statutory provision of title 11, while "arising in" jurisdiction is not based on a right expressly created by title 11, but rather based on claims that would have no existence outside of bankruptcy. *See Wood v. Wood*, 825 F.2d 90 (5th Cir. 1987). Claims "related to" cases under title 11 do not inhere rights created by title 11 or existing solely because of a bankruptcy case. Rather, "related to" claims vest jurisdiction to a bankruptcy court if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *See Celotex Corp. v. Edwards*, 514 U.S. 300, 307 n. 6 (1995); *Wood*, 825 F.2d at 93.

Bankruptcy judges are empowered by statute "to hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11… and may

enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1). However, before a bankruptcy judge may hear any case, the governing district court must "refer" the case to the bankruptcy court. 28 U.S.C. § 157 (a)-(b)(1). "Arising under," "arising in," and "related to" bankruptcy cases are automatically referred to this Court. *In re: Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012). Under its § 157 authority, a bankruptcy court may enter final orders and judgments on "core" proceedings, but bankruptcy courts must submit to the district court (for *de novo* review) "proposed findings of fact and conclusions of law" on non-core proceedings "related to" a case under title 11. 28 U.S.C. § 157(c)(1). Section 157 enumerates a non-exhaustive list of proceeding types considered "core." 28 U.S.C. § 157 (2)(A)-(P). Furthermore, the Supreme Court has further clarified the definition of "core" as all proceedings that "arise in" a bankruptcy case or "arise under" title 11. *Stern v. Marshall,* 131 S. Ct. 2594, 2605 (2011).

With the consent of all parties, however, a district court may authorize bankruptcy courts to enter orders and judgments in non-core, "related to" proceedings. 28 U.S.C. § 157(c)(2).

The instant matter is a core proceeding, because it involves a dispute over the appropriateness of an administrative claim, which is solely rooted in bankruptcy law under title 11. Therefore, this Court has statutory authority to hear the instant matter and to enter any appropriate final judgment.

This Court may only hear a case in which venue is proper. Venue with respect to cases under title 11 is governed by 28 U.S.C. § 1408, which designates that venue may be commenced in the district "in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity…" have been located for the one

180 day period preceding such commencement. Debtor is domiciled in Weslaco, TX. Therefore, venue is proper.

**B. Constitutional Authority To Enter A Final Order**

This Court also has an independent duty to evaluate whether it has the constitutional authority to sign a final order. *Stern*, 131 S. Ct. at 2594. In *Stern v. Marshall*, the Supreme Court considered the constitutional limitations that Article III imposes upon § 157's grant of final order and judgment powers to non-Article III courts. *Id.* The Supreme Court held that § 157 violated Article III to the extent that it authorized final judgments on certain matters. *Id.* at 2616. The Court found that the particular bankruptcy ruling in dispute did not stem from bankruptcy itself, nor would it necessarily be resolved in the claims allowance process, and it only rested in a state law counterclaim by the estate. *Id.* at 2618. The Court reasoned that bankruptcy judges are not protected by the lifetime tenure attribute of Article III judges, but they were performing Article III judgments by judging on "all matters of fact and law" with finality. *Id.* at 2618-19. Hence, the Court held that Article III imposes some restrictions against a bankruptcy judge's power to rule with finality. The Court found that a solely state law based counterclaim, while statutorily within the bankruptcy judge's purview, escaped a bankruptcy court's constitutional power. *Id.* at 2620. This Court reads *Stern* to authorize final judgments only where the issue is rooted in a right created by federal bankruptcy or the resolution of which relies on the claims allowance process. In other words, this Court may issue final judgments and orders where the issue "arises in" or "arises under" bankruptcy, but not where the issue is merely "related to" bankruptcy. *See* 28 U.S.C. § 157. However, even where the case does create a "Stern problem," Article III will be satisfied where the parties to the case knowingly and

voluntarily consent to the bankruptcy court's power to issue final judgments. *Wellness International Network v. Sharif*, 135 S. Ct. 1932, 1938-39 (2015).

The instant matter is a core proceeding, because it involves a dispute over the appropriateness of an administrative claim, which is solely rooted in bankruptcy law under title 11. Therefore, this Court holds the constitutional authority to enter a final order in the instant matter.

## IV. Conclusions of Law

Creditor seeks recovery of what is essentially "stub rent," which is often defined as the rent due after the time in which a debtor lessee petitions for bankruptcy. *See In re Imperial Beverage Group, LLC,* 457 B.R. 490, 501 (Bankr. N.D. Tex. 2011). This case presents a different situation, wherein Creditor claims full entitlement to the Homestead Property as the owner, there is no underlying or past lease, and Debtors have been living on the property rent-free post-petition. Essentially, Creditor claims that the lost opportunity represented by Debtors' possession of the Homestead Property is an expense that should be characterized as an administrative expense under 11 U.S.C. § 503.

Section 503(b)(1)(A) allows a bankruptcy court to award administrative expenses for the "actual, necessary costs and expenses of preserving the estate." Where a debt is characterized as an administrative expense, such creditor enjoys an entitlement to distribution second only to domestic support obligations. 11 U.S.C. § 507(a). The purpose of administrative expenses is clear: §§ 503 and 507 work in tandem to encourage entities to do business with a debtor post-petition and thus ensure the survival of the estate above all other financial goals. *Zagata Fabricators, Inc. v. Superior Air Products*, 893 F.2d 624, 627 (3d Cir. 1990). The burden is

upon the creditor seeking administrative expenses to prove that the costs or expenses are actual, necessary, and beneficial to the estate. *See In re Buttes Gas & Oil Co.*, 112 B.R. 191, 193 (Bankr. S.D. Tex. 1989). The benefit to the estate must constitute a "substantial contribution." *Id.* The creditor must also show that the transaction arose post-petition to which the estate or debtor in possession was a party. *Id.* Moreover, it is incumbent upon the courts to award administrative costs only to the extent of the benefit of preservation conferred to the estate. Where the creditor shows that (1) necessary and actual costs have substantially contributed to the estate or debtor in possession, and (2) that the transaction arose post-petition, that creditor shall have established a *prima facie* case for an administrative expense. *In re Coastal Carriers Corp.*, 128 B.R. 400, 403 (Bankr. D. Md. 1991). Where a *prima facie* case for administrative expenses is established, the burden then shifts to the objecting party to disprove the merit of the claim.

There is no dispute that Creditor here seeks administrative costs for Debtors' possession post-petition, which is a continuing involuntary transaction arising out of Debtors' possession, and thus satisfying the requirement that the transaction arose post-petition.

This Court is left with several curious quandaries. The instant case is a chapter 13 proceeding, and so can it be said that an "estate" has been benefited by virtue of Debtors residing in Creditor's property rent-free? Moreover, is an opportunity cost with respect to residential property an "actual" cost? Finally, is living in a residence "necessary" to preserve the estate? This Court will consider each element of § 503(b)(1)(A) in turn.

*Actual*

This Court's fellow bankruptcy court from the Northern District of Texas has persuasively held that where a debtor uses a landlord's property and does not pay rent, such

landlord would be entitled to a § 503 administrative expense as an actual cost. *In re Imperial Beverage Group, LLC*, 457 B.R. at 501. However, there is no underlying lease in the instant case. This is not a fatal fly in the lotion. The terms of an underlying lease would provide evidence of the reasonable costs benefiting the estate. *See Zagata Fabricators*, 893 F.2d at 627 ("a debtor is generally required to pay only the reasonable value for the use and occupancy of the landlord's property, which may or may not equal the amount agreed upon in the terms of the lease"). However, the standard for a § 503 claim is the reasonable value conferred to assist in preserving the estate, which is an inquiry in which courts must engage, with or without a lease agreement. *Id; c.f. Reading Co. v. Brown*, 391 U.S. 471, 483-85 (1968) (holding that actual and necessary costs can include claims for a chapter 11 receiver's post-petition tort, because such would be an integral and essential element of the continuation of the business). The facts of the instant matter reassure that this Court is faced with an inquiry of similar caliber to that of the unpaid landlord. Like any landlord who leases to a tenant, Creditor was here denied the ability to rent out or sell the Homestead Property by virtue of the Debtors' occupation therein and the State Court's Restraining Order.

This Court concludes that the Debtors' occupation of the Homestead Property rent-free constitutes an "actual" cost under § 503(b)(1)(A).

*Necessary*

A court must also conclude that the cost borne is "necessary" to preserving the estate. Creditor has here met its burden of proof. It is self-evident that in order to survive and faithfully prosecute a bankruptcy case, an individual debtor must have a physical home to occupy. *C.f. Zagata Frabricators*, 893 F.2d at 627 ("In order to survive, a financial entity almost always

needs a physical space to occupy"). Here, Enrique Espinosa had a home to live in, facilitating his ability to work and make income. Debtors were spared the need to move, representing an expense saved, and the need to spend money on an apartment rental or home purchase. In consequence, more money was available to satisfy Debtors' creditors in the chapter 13 plan.

It is evident that Debtors' occupation of Creditor's Homestead Property was an actual and necessary cost borne by Creditor.

*Preserve the Estate by a Substantial Contribution*

Debtors protest that since Creditor has represented to the Court that it is the true owner of the Homestead Property, the Homestead Property was never property of the estate, and Creditor therefore cannot be entitled to a § 503 administrative expense. [ECF No. 78 at 2]. In apparent support of this argument, Debtors cite *In re Computer Learning Centers, Inc.*, 298 B.R. 569 (Bankr. E.D. Va. 2003), for the proposition that a court should deny administrative expenses where the property in question is no longer property of the estate. There is no such categorical rule in the law. Rather, the creditor must transact, post-petition, with the estate or the debtor in possession in a way that benefits the estate or the debtor in possession. 4 Alan N. Resnick & Henry Sommer, *Collier on Bankruptcy* ¶ 503.06[3][a] (16th ed. 2015). In *In re Computer Learning Centers*, the chapter 7 debtor, an educational institution, had turned over student records into the custody of creditor, as required by California's record retention regulations. 298 B.R. at 573. The court concluded that the creditor had not met its burden of proof in showing that it was entitled to an administrative claim for the costs of storing the student records, because the creditor permanently assumed ownership of the records and had not otherwise shown how this assumption of ownership benefited the administration of the liquidating estate. *Id.* at 577.

At best, the fact that the property in question is not technically property of the estate can show that any costs associated with such property is not benefiting the estate.

That is not the case here. Here, Debtors' estate benefited through the benefit conferred personally to Debtors. Debtors were able to generate income by virtue of having a place to live. Moreover, by living rent-free in the Homestead Property, Debtors were able to save money that they would have spent in maintaining an alternative place to live, and these saved resources were free to be utilized in their monthly budget and/or delivered to the chapter 13 trustee and thereby satisfy the creditors. *See NL Industries, Inc. v. GHR Energy Corp.*, 940 F.2d 957 (5th Cir. 1991) ("the debt must benefit [the debtor's] estate and its creditors"); *see also Matter of TransAmerican Natural Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992). It would be untenable to conclude that Creditor's provisioning of a home for a household of 8 to 9 members, where Debtors rely on Enrique Espinosa's income to have a successful chapter 13 case, is anything but a substantial contribution by Creditor to the successful administration of the chapter 13 estate.

It is plainly evident that lack of rental payments, which are actual and necessary expenses of Debtors, to Creditor has assisted in preserving the estate by freeing Debtors' resources.

*Valuation*

Having concluded that Creditor is entitled to § 503 claim, this Court is left to consider the *amount* of benefit conferred to the estate. The amount of the benefit conferred to the estate is the reasonable rental value of the property that was occupied or used by the estate. 4 Alan N. Resnick & Henry Sommer, *Collier on Bankruptcy* ¶ 503.06[6][c] (16th ed. 2015). If there is an underlying lease, the rental figure therein is presumed to be the reasonable rental value, subject to rebuttal by the objecting party. *Id.* The record here shows that there is no underlying lease,

but Debtor is arguably a tenant at sufferance under Texas landlord law, at least for the purpose of determining whether Debtors' possession of the Homestead Property is similar in nature to those landlord/tenant arrangements that do allow for recovery of an administrative expense under § 503(b)(1)(A).[3] Under Texas law, where a person holds over after a judgment divests him or her of title to real property, such person is considered a tenant at sufferance to the prevailing party. *Steed v. Barefield*, 348 S.W.2d 205, 207 (Tex. Court of Civ. App. 1961); 49 Tex. Jur. 3d *Landlord and Tenant* § 14 (2015). This Court is not persuaded by Debtor's "second bite of the apple argument" in which Debtors contend that the State Court's silence with respect to the grant of rent during the temporary injunction's duration, which would presumably precede all the way to trial on the wrongful foreclosure claim, clearly shows that the State Court denied a request for rent. [ECF No. 78]. Allegedly, Creditor had requested rent for the reasonable rental value of the property at a hearing on the temporary injunction against seeking possession of the Homestead Property. *Id.* Debtors are indeed correct that the State Court was silent with respect to the award of rent, even while requiring Debtors to post a $750 monthly bond as a condition of the temporary injunction. [Debtor Ex. A]. However, Debtors have provided no evidence that Creditor requested rent at any state court hearing, preventing this Court from even approaching the question of whether such State Court silence would have some effect on the question of whether Debtors' use of Creditor's property is entitled to a § 503(b)(1)(A) administrative expense.

Creditor suggests that the reasonable rental value of the property lies within a range of $1,100 to $1,200 per month for the months of May 2015 through September 2015. [ECF No. 77

---

[3] *C.f.* In re ES2 Sports & Leisure, LLC, 519 B.R. 476, 480 (Bankr. M.D.N.C. 2014) ("Bankruptcy courts will apply federal bankruptcy law to determine what property belongs in an estate and state law to determine the nature and extent of property rights concerning assets in the estate") (citing *Butner v. United States*, 440 U.S. 48 (1979)).

at 3]. Debtor vehemently opposes this valuation. At the Evidentiary Hearing, Creditor brought forth a Mr. J. Hector Cavazos to testify regarding the reasonable rental rate for property similar to the Homestead Property. Mr. Cavazos is a licensed real estate agent in the State of Texas, and has held such license for over 20 years. Creditor presented Mr. Cavazos at the Evidentiary Hearing as an expert on real estate valuation, having provided over one thousand real estate valuation opinions to lending institutions, attorneys, and other private entities. At the Evidentiary Hearing, Debtors moved to strike Mr. Cavazos as unqualified, which this Court denied.

Mr. Cavazos testified that he had formed his opinion on the reasonable rental value of the property by performing a "drive-by" inspection of the Homestead Property and looking to the square footage of the home, the neighboring area, the school district, and the location. The thrust of Debtors' protest to Mr. Cavazos's opinion on the reasonable rental value is that he merely performed a drive-by inspection of the Homestead Property, without inspecting the interior. The failure to inspect the interior, Debtor argues, is that Mr. Cavazos had no way of knowing whether the interior of the house was gutted or materially damaged, such that the reasonable rental value would be much lower. However, Debtors presented no evidence that the interior was destroyed, such that the home value was significantly reduced as to impair Mr. Cavazos's opinion. Rather, Debtors strictly relied on their conclusory casting of aspersions. In the absence of evidence casting serious doubt into Mr. Cavazos's opinion, this Court concludes that Creditor has shown itself entitled to some administrative expense. Moreover, Debtors' Pyrrhic[4] argument, essentially

---

[4] Named after the Greek general Pyrrhus of Epirus, a "Pyrrhic Victory" is a technical victory in which the losses to the victor are excessive. *See Webster's New Collegiate Dictionary*, "Pyrrhic Victory" (1976). Purportedly, in reflecting on his success against the Romans, Pyrrhus remarked, "If we are victorious in one more battle with the Romans, we shall be utterly ruined." Plutarch, *The Parallel Lives, Life of Pyrrhus,* 417. Similarly, Debtors sought a victory on the valuation of the reasonable rental rate of the Homestead Property through the casting of evidentiary doubt, but risk losing the war by demonstrating abject bad faith.

in advancing the claim that they might have committed waste on the Homestead Property, is startlingly not in good faith. To accept such an argument would be to encourage Debtors to commit waste in an effort to secure a discount on administrative expenses. The purpose of the combined effects of §§ 503(b) and 507 are to encourage creditors to transact with debtors post-petition. *See Zagata,* 893 F.2d at 627. To accept Debtors' argument here would allow for the utter frustration of this statutory purpose.

However, Creditor is not necessarily entitled to the full $1,100 to $1,200 per month for which it pleads, since Creditor has not necessarily conferred this amount of benefit to the estate. The amount of benefit conferred to the estate is the amount of money Debtors saved by avoiding alternative living arrangements. It has not been shown that Debtors would alternatively have rented an apartment for $1,100 to $1,200 per month. Indeed, when the State Court issued a temporary injunction forbidding Creditor from pursuing its right to the Homestead Property, it required Debtors to post a bond of $750 per month, which is good evidence demonstrating that reasonable rental is likely to be $750 per month. [Debtor Ex. A]. While this Court is not bound by the State Court's judgment, such judgment is assuredly solid evidence of the reasonable value conferred to the estate. It was demonstrated at the Evidentiary Hearing that there are 8 or 9 individuals who have been living in the Homestead Property. To support a household that large, Debtors' alternative living arrangements are likely to have been at least $750 per month.

On balance, this Court hereby determines that the reasonable benefit conferred to the estate is $750 per month. To borrow the words of Creditor's counsel in closing argument at the Evidentiary Hearing, "Debtor can't get something for nothing."

## V. Conclusion

This Court concludes that Creditor is entitled to a § 503 administrative expense. Moreover, this Court concludes that the actual and necessary post-petition expense incurred in preserving the estate is $750 per month, in accordance with the reasonable rental rate.

An order consistent with this Memorandum Opinion shall be docketed simultaneously herewith.

SIGNED 12/03/2015.

Eduardo V. Rodriguez
United States Bankruptcy Judge